IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

KELLY MAKOWKA,

    Appellant

v.

POCONO MOUNTAIN LAKE ESTATES,

    Appellee

3:12-CV-2232
(JUDGE MARIANI)

(BANKRUPTCY APPEAL)

## MEMORANDUM OPINION

### I. Introduction

The matter on appeal before this Court is whether the Bankruptcy Court erred in holding that Appellee preserved its statutory lien despite its alleged failure to foreclose on the lien under the Uniform Planned Community Act, 68 PA. CONS. STAT. §§ 5315(a) & 5315(e). This Court has jurisdiction pursuant to 28 U.S.C. § 158(a). For the reasons set forth below, the Court will affirm the Bankruptcy Court's ruling.

### II. Statement of Relevant Facts and Procedural History

Appellee, Pocono Mountain Lake Estates ("PMLE"), is a planned community, as defined by the Uniform Planned Community Act, 68 PA. CONS. STAT. §§ 5101-5414. Appellant, Kelly Makowka ("Makowka"), is a resident of the planned community who, beginning in 2005, fell behind on her association dues which began to accrue late charges. (*See* Amended Proof of Claim, Doc. 17, Ex. A).

FILED
SCRANTON
JUL 12 2013
PER _____
DEPUTY CLERK

In 2008 and 2010, PMLE initiated two actions in debt in the Pike County Magisterial District Court to recover money judgments on its statutory lien against Makowka and obtained default judgments in the amounts of $2,436.70 and $3,599.08 plus interest and costs. Both default judgments were transferred and entered in favor of PMLE and against Makowka in the Court of Common Pleas of Pike County.[1] Thereafter, the Court of Common Pleas of Pike County issued a Writ of Execution and attachment in both cases, and the Sheriff of Pike County scheduled a sheriff's sale for September 14, 2011 in furtherance of the Writ of Execution. (Appellee's Brief, Doc. 17, at 4).

On September 12, 2011, Makowka filed for Chapter 13 Voluntary Bankruptcy, and disputes arose between the parties over PMLE's Proof of Claims against Makowka. Thus far, Makowka's proposed Chapter 13 Plans seek to avoid PMLE's statutory lien because, according to her, it has "extinguished" by law due to PMLE's failure to enforce it via a mortgage foreclosure action under Sections 5315(a) and (e). The Bankruptcy Court ruled that PMLE could file a claim in the amount of $7835.82,[2] by recognizing PMLE's preservation of its statutory lien against Makowka.[3] (See July 19 and Sept. 25, 2012 Transcripts of Oral Arguments).

---

[1] The cases are docketed at 2008-45825 and 2010-45448, respectively.
[2] See Amended Dues in Arrears, Doc. 17, Ex. B.
[3] Makowka has filed a Third Amended Chapter 13 Plan which is pending approval from the Bankruptcy Court and which presumes her appeal to this Court is successful. The Bankruptcy Court's ruling on her Third Amended Plan is continued, however, until the outcome of this appeal. (See Appellant's Brief, Doc. 9, at 2-3).

### III. Standard of Review

"[T]he Bankruptcy Court's findings of fact are reviewed only for clear error, while legal determinations are reviewed *de novo.*" *In re Heritage Highgate, Inc.*, 679 F.3d 132, 139 (3d Cir. 2012). The issue before this Court is purely a matter of statutory interpretation, so the Court will review the Bankruptcy Court's ruling *de novo*.

### IV. Analysis

<u>Statutory Interpretation of the Uniform Planned Community Act</u>

The parties agree that the Uniform Planned Community Act ("UPCA"), 68 PA. CONS. STAT. §§ 5101-5414 governs this action. Under the relevant terms of the UPCA, "[t]he association has a lien on a unit for any assessment levied against that unit or fines imposed against its unit owner from the time the assessment or fine becomes due. The association's lien may be foreclosed in a like manner as a mortgage on real estate." 68 PA. CONS. STAT. § 5315(a). "A lien for unpaid assessments is extinguished unless proceedings to enforce the lien are instituted within three years after the assessments become payable." *Id.* § 5315(e). "Nothing in this section shall be construed to prohibit actions or suits to recover sums for which subsection (a) creates a lien or to prohibit an association from taking a deed in lieu of foreclosure." *Id.* § 5315(f).

Makowka argues that if this Court affirms the Bankruptcy Court's ruling that PMLE preserved its statutory lien against her, then she may not avoid the lien under 11 U.S.C. §

3

522(f), "which limits avoidance of liens to judicial liens and nonpossessory, non-purchase money security interests." (Doc. 9, at 5).

In support of her argument, Makowka states that the UPCA provides for "a single method to enforce the lien," which is to initiate foreclosure proceedings under § 5315(a). (*Id.*). Makowka argues that 5315(e)'s provision for "proceedings to enforce the lien" through a foreclosure action as provided for in 5315(a) is the exclusive method of avoiding extinguishment of the lien within three years of "assessments becom[ing] payable." According to Makowka, 5315(f)'s provision for "actions or suits to recover *sums* for which subsection (a) creates a lien" do nothing to *enforce* the lien, and when PMLE filed actions for debt in Pike County, it failed to enforce the lien via a foreclosure sale, thereby extinguishing the lien.

PMLE points out that: (1) Section 5315(a) provides that an association "*may . . . foreclose[]* in a like manner as a mortgage on real estate," (2) Section 5315(e) does not require *foreclosure* proceedings to enforce a lien to be initiated within three years of assessments becoming payable, but merely "proceedings to enforce," and (3) Section 5114(a) states that "[t]he remedies provided . . . shall be liberally administered to the end that the aggrieved party is put in as good a position as if the other party had fully performed."

Although the Court finds Makowka's arguments persuasive and her interpretation of Sections 5315(a), (e), and (f) is correct because it preserves the traditional distinction

4

between foreclosure actions which are *in rem* in nature and actions in debt or contract which are *in personam* in nature, the Pennsylvania Superior Court clearly has held otherwise (*see infra*), and this Court is bound by its ruling.[4]

## Pennsylvania Case Law

Two Pennsylvania appellate court cases have touched on this issue: *London Towne Homeowners Ass'n v. Karr*, 866 A.2d 447 (Pa. Commw. Ct. 2004) and *Forest Highlands Cmty. Ass'n v. Hammer*, 903 A.2d 1236 (Pa. Super. Ct. 2006).

In *Karr*, the appellant (Karr) appealed the trial court's denial of his motion to strike an assessment lien on his property. The question before the Commonwealth Court was "whether a planned community, which has a recorded and perfected lien against all units in the community for unpaid assessments, must file a second lien in order to enforce its assessment against one of those unit owners." 866 A.2d at 448. Stated another way, "[t]he question, then, is whether a second lien that perfects an already perfected lien 'substantially complies' with the requirements of the Act and is required to enforce an assessment lien." *Id.* at 451.

The Commonwealth Court first looked to Section 5315(a) and noted an "association's lien may be foreclosed in a like manner as a mortgage on real estate" but found that "an association may also pursue payment of unpaid assessments by employing

---

[4] Of course, this interpretation means that if an association wishes to enforce its lien under 5315(e) rather than recover sums under 5315(f), it *must* initiate foreclosure proceedings within three years of the assessments becoming due under 5315(a) and (e), thereby effectively transforming the permissive "may" into a mandatory "shall" for enforcement purposes.

5

remedies less drastic than foreclosure. It is free, for example, to bring an action in debt or in contract to collect an assessment" under Section 5315(f). *Id.* at 452.

> The filing of the second lien . . . did not advance the Association's enforcement of its assessment lien by foreclosure in "like manner as a mortgage on real estate." An action of mortgage foreclosure is an action at law governed by the Pennsylvania Rules of Civil Procedure. These procedural requirements must be strictly followed. Nowhere do these rules require, or authorize, the filing of a second lien. To the contrary, they specify that a foreclosure action begins with the filing of a complaint that sets forth, *inter alia*, where the mortgage is recorded and the amount outstanding on the mortgage. To enforce its assessment lien against Karr in accordance with the Act, the Association should have filed a complaint, not a new lien.

*Id.* (internal citations omitted). Ultimately, the Commonwealth Court reversed the trial court's denial of the appellant's petition to strike the association's second lien. This Court interprets *Karr* to narrowly hold that while an association may pursue an action in debt or contract against a tenant under 5315(f) to recover sums due under a lien, "[t]he first step to *enforcing* an assessment lien is the filing of a foreclosure complaint." *Id.* at 453 (citing Section 5315(a) (emphasis added)).

Nearly two years later, however, the Pennsylvania Superior Court borrowed heavily from *Karr* in expanding the law on what constituted "proceedings to enforce" a lien. In *Hammer*, the question before the court was "whether instigating a sheriff's sale perfects an already perfected assessment lien and 'substantially complies' with the requirements of UPCA to allow enforcement of Appellant's assessment lien." 903 A.2d at 1239. The association argued "that the automatic creation of a lien upon a unit owner's property for failure to pay assessment fees (per Section 5315(a)) dispensed with the need to file a

6

complaint, and this allowed [it] to seek repayment of monies claimed due by means of a sheriff's sale." *Id.* The Superior Court "disagree[d]." *Id.*

Like the *Karr* court, the *Hammer* court concluded that "an association is not precluded from pursuing other avenues to obtain payment of assessments less drastic than foreclosure. For example, an association can avail itself of an action in debt or in contract to collect an assessment" under Section 5315(f). *Id.* at 1240. Thus, "seeking a judicial sale of Appellee's unit did not advance the Association's enforcement of its assessment lien by foreclosure in like manner as a mortgage on real estate." *Id.* (citing Section 5315(a)).

The Superior Court, however, went a step further and acknowledged it was "expanding upon the rationale of *Karr*," by holding "that Appellant seeking a judicial sale as the vehicle to secure payment of its assessment lien did not equate with the *approved enforcement mechanism* to collect an assessment lien by an association's action in mortgage foreclosure, *action in debt or contract*." *Id* (emphasis added). The court concluded " '[t]he first step to enforcing an assessment lien is the filing of a foreclosure complaint[, action in debt or contract]. 68 PA. C.S.[A.] § 5315(a).' " *Id.* at 1241 (*citing* Karr, 866 A.2d at 453). Thus, the *Hammer* court clearly held that by filing an action in debt or contract, an association was enforcing its lien under the UPCA.

Makowka takes issue with the *Hammer* court's expansion of methods to enforce an assessment lien to include actions in debt or contract. In this Court's view, Makowka's position has merit. The *Hammer* court, in holding that the action in debt to collect unpaid

7

assessments owed by the appellee satisfied the requirement in Section 5315(e) that proceedings to enforce a lien for unpaid assessments be instituted within three years of the assessments becoming payable, ignored the well-established and fundamental distinction between proceedings *in rem* and those brought *in personam*. It is difficult for this Court to understand how an action brought under Section 5315(f) "to recover sums for which subsection (a) creates a lien" can be considered a "proceeding[] to enforce the lien" for those unpaid assessments. As a matter of statutory interpretation, it appears to this Court that subsection (f) permits an action on the debt underlying the lien in the same way that a mortgagee may choose to proceed upon a promissory note given by a mortgagor to obtain a judgment *in personam* rather than initiate *in rem* mortgage foreclosure proceedings.

Nonetheless, *Hammer* presents the latest and most definitive ruling by the intermediate courts of Pennsylvania with respect to the interpretation of Section 5315 and because the issue before this Court is unquestionably a matter of Pennsylvania law, it will give *Hammer* the binding effect that it must.[5] Bankruptcy Judge Opel held oral argument on July 19, 2012 and also expressed his opinion that he was bound by *Hammer*.

> THE COURT: So, the -- and, Mr. Christman, let me go back to you. The -- the language of the statute 5315(e), "A lien for unpaid assessments is extinguished unless proceedings to enforce the lien are instituted within three years after the assessments become payable."

---

[5] The Pennsylvania Supreme Court has not yet weighed in on this matter. If a state's supreme court has not ruled on an issue, a federal court's role is to do its best to predict how the state court would rule, *Roma v. United States*, 344 F.3d 352, 361 (3d Cir. 2003) ("Ordinarily, in so predicting, the rulings of intermediate state appellate courts must be accorded significant weight.") (internal citations and quotation marks omitted). Because the Pennsylvania Superior Court was clear in its holding and there appears to be no authority contrary to *Hammer*, this Court will not predict that the Pennsylvania Supreme Court would overturn *Hammer*.

8

> MR. CHRISTMAN: Yes. The association in this case took no action to enforce its lien. They took an action against the debtor personally. They took the Section (f), as opposed to Section (e). Section (e) is one section of Section 5315, Section (f) is a different section of 5315. The association chose to pursue my client personally, the other remedies preserved. The association did not seek to, as the statute clearly indicates, and exclusively indicates, general rule under, you know, 5315(a), "The association's lien may be foreclosed in a like manner as a mortgage on real estate." That is the only indication of a method of enforcement, other than the other remedies preserved. The limitation of actions, you know, given that it's separate and distinct from Section (f), does narrowly refer back to the -- in (a), "The association's lien may be foreclosed in a like manner as a mortgage on real estate."

(July 19, 2012 Transcript, at 11:8-12:4). In response to Makowka's counsel's argument, the

Bankruptcy Court held:

> THE COURT: I'm guided very strongly by a case which happens to be cited in the Association's brief, Pennsylvania Superior Court decision *Forest Highlands Community Association v. Hammer*, which is reported at 903 Atlantic 2d. 1236, a 2006 Pennsylvania Superior Court decision. And I want to just -- I don't usually read much from the bench, but I think it's very much on point. And it's making reference initially to Section 5315 of the UPCA, Uniform Planned Community Act, which is, in large, the section that we've been discussing here this morning. "68 Pa. C.S.A. 5315: Furthermore, an association is not precluded from pursuing other avenues to obtain payment of assessments less drastic than foreclosure. For example, an association can avail itself of an action in debt or in contract to collect an assessment. Subsection (f) of the UPCA provides support for such alternative remedies," and it -- "as follows," and it goes on and just basically quotes the language from Subsection (f) which I read into the record earlier.
>
> . . .
>
> I do think that the -- I think I am bound by Pennsylvania Appellate decisions construing its own statutes. And the Superior Court has said that the association -- an association, such as the claimant here, can perfect or enforce the lien for the unpaid assessments in a variety of manners. And one of the manners specifically mentioned is an action in debt. So, I do not -- I

9

reject the debtor's argument that the mortgage foreclosure action would be the exclusive remedy.

(*Id.* at 13:16-14:8, 15:3-11). Counsel for PMLE also raised an interesting point which the Court addressed:

> MR. ANDREUZZI: What right [does the association] have to bring a mortgage foreclosure action? They have no right, they have no mortgage. This was an action on the debt, and they could enforce that -- that debt in any manner. The key is that was the way they enforced it, and that's what the statutory language calls for: the enforcement of the debt. And that's exactly what they did. They went after the debtor repeatedly over a three- to four-year period and -- oh, there was a Sheriff's sale scheduled on September 14th, and the debtor files on September the 12th. A Sheriff's sale instituted by Pocono.
>
> THE COURT: So, you were executing on the money judgment.
>
> MR. ANDREUZZI: We were executing on the money judgment. We have no mortgage.
>
> . . .
>
> THE COURT: I do -- I do take Mr. Andreuzzi's point also that it would be an odd foreclosure complaint that if -- I think if -- I haven't looked at it in a long time, but I bet if you looked at PA RCP 1141, like the elements, I think that might be the elements of a mortgage foreclosure complaint, it'd probably say you should either attach the mortgage or give, you know, mortgage recording information. Well, how would a property owner's association do that? I take his point that they do not hold a mortgage.

(*Id.* at 10:2-17, 15:12-20). Following this initial ruling, Makowka filed a motion for reconsideration with the Bankruptcy Court, and the Court held oral argument on the matter for a second time on September 25, 2012. There, the Court expanded on its previous rationales for rejecting Makowka's arguments:

THE COURT: And I suppose that -- and I guess I try to make sure that we're not looking at an absurd result here. But it does strike me that I'm not sure how many homeowners' associations particularly would want to foreclose and end up having a lot of lots in inventory. I mean I think they are -- they are generally, as I understand, nonprofit associations. They try to manage the common areas, they try to enforce the covenants to a degree. But I could understand them at least wanting to perfect and continue their lien so that in the event of a foreclosure proceeding, their lien would be there. If there is competitive bidding, they may get paid that way. They may get paid through a voluntary sale of the property because they've extended their statutory lien. But it's hard for me to understand why the legislature would say the only way a nonprofit association can maintain its lien would be to go through a strict foreclosure.

(Sept. 25, 2012 Transcript, at 10:17-11:7). The Court went on to say:

So, I'm strongly guided by two Pennsylvania appellate decisions: First is the decision of *London Towne Homeowners Association v. Karr*, which is reported at 866 Atlantic 2d 447, Pennsylvania Commonwealth 2005. And in that decision, the court was also considering the meaning of the Uniform Planned Community Act in that the Commonwealth Court noted, "However, an association -- a homeowners' association may also pursue payment of unpaid assessments by employing remedies less drastic than foreclosure. It is free, for example, to bring an action in debt or in contract to collect an assessment." Subsection (f) provides for such remedies. And I think that's in keeping with the way I was reading Subsection (f). There's also a decision out of the Pennsylvania Superior Court, *Forest Highlands Community Association v. Hammer*, which is reported at 903 Atlantic 2d. 1236, PA Super 2006. And this is the case that Mr. Christman and I discussed briefly during his argument where the -- in that case, the association filed a second lien, and then sought to execute on that lien. The Superior Court said look, you should either sue in contract or a mortgage foreclosure because of due process concerns. And the decision, I think, again, is consistent with my construction that the homeowners' association has alternatives to avoid the extinguishment of the lien after three years. I want to say that I tried -- I really did reconsider this, and I was -- I think I was more deliberate and more careful than in the first instance because I had -- I had briefs in advance of this argument. I even went back and looked at the Pennsylvania Rules of Civil Procedure on mortgage foreclosure actions. And it is significant to me, gentlemen, that Pa. RCP 1147 provides that the complaint in a mortgage foreclosure action shall

11

set forth, quote, "the parties to and the date of the mortgage, and any assignments and a statement of the place of record of the mortgage and assignments," unquote. In this case, it is uncontested that the association does not hold a recorded mortgage, which could be so pled. And I think it would be an odd construction of the law that I would require an association to do something that I almost -- I don't want to say -- I'm not going to say that it would be sanctionable. But I think -- I think Mr. Andreuzzi would be in a very difficult position to try to craft a mortgage foreclosure complaint on behalf of a client who does not hold a mortgage.

So, I find that there are no grounds -- that no grounds have been stated to reconsider my order of July 19th of 2012, and the motion for reconsideration is denied for the reasons I've stated on the record pursuant to Bankruptcy Rule 7052.

(*Id.* at 14:21-16:21). Clearly, the Bankruptcy Court felt bound by *Hammer*, and this Court similarly is compelled to follow *Hammer* and will, therefore, affirm Judge Opel's decision.

## V. Conclusion

For the foregoing reasons, the Court will affirm the Bankruptcy Court's ruling that PMLE's filings of actions in debt under 68 PA. CONS. STAT. § 5315(f) against Makowka for unpaid assessments were "proceedings to enforce the lien" under Sections 5315(a) and (e), thereby preserving PMLE's statutory lien. A separate Order follows.

Robert D. Mariani
United States District Judge

12